United States v. McBride, 22-4-119. Good morning, Your Honors, and may it please the Court. Can you move the microphone? There you go. Yes, for sure. Thank you. My name is Matthew Lewis. I represent Appellants Whitney McBride and Odyssey International. Ms. McBride and Odyssey were convicted of conspiracy to commit wire fraud, wire fraud itself, and major fraud, and Ms. McBride was also convicted of making a false declaration following five days of jury deliberation, during which time the jury indicated at least once that it was deadlocked. This was a close decision. Appellants' fraud counts relate to the award of a government contract to maintain the Fort Drum Army Base. There is no dispute that the government was going to spend the money set aside for maintenance at Fort Drum, whether that money went to Odyssey or another bidder. The government also does not dispute that Odyssey fully performed under the contract. Because the government had already earmarked the funds for this necessary expenditure and the government received what it bargained for, the government was not deprived of any money. Rather, it merely lost the ability to control which bidder would best further the goals of the HUBZone program. In other words, the government was deprived of the right to control the expenditure of its funds. These key facts bring the case within the Supreme Court's recent decision in Simonelli v. United States, which held that the right to control is not protected under the federal fraud statutes and requires that appellants' convictions on counts 1 through 3 be vacated. Ms. McBride's conviction on count 5 for presenting a false declaration to a court should also be vacated. As Ms. McBride argued below in her motion for judgment as a matter of law on count 5, the count is improper because it is inherently ambiguous. I'm sorry, what? It is inherently ambiguous given that it is premised on Ms. McBride's alleged belief about the existence of an attorney-client relationship. A nuanced legal question. Well, what difference does that make to the fact that it was a false statement? She knew that that person was not doing what they suggested she was doing. I don't think she knew that at all. Was there evidence to that effect? There is, I think. And what has always bothered me about this count specifically is I don't think I could, and maybe I'm opening the door here to a response about my legal talent, but I don't think I could answer the question whether Mr. Hendrickson was serving as her counsel. But what difference does it make whether he was an attorney with an A rating or was not an attorney? Well, what the difference is, is that this is a hard question to answer. And that's the inherent thing. It's a hard question to answer whether he was an attorney. Well, whether he was acting as her counsel. But what does that have to do with whether or not there was a false statement that she made? Because the false statement that's alleged in the declaration is about her belief as to whether or not he was providing legal counsel in the case. And he was acting... Was that the false statement that she was convicted on or was it the statement that they had these people working that qualified for the contract? For the HUBZone? No. As to this false declaration count, she was convicted for her saying that she believed Mr. Hendrickson was acting as legal counsel. It had nothing to do with the HUBZone employees. So assuming that, you know, how could that be material? Material to... She thought somebody was her attorney. Well, that was the charge that was made. The false statement was that she had this person working who qualified them for the contract. Now, the first three counts in the five-count indictment address the alleged fraud, but count five was specifically addressed. What had happened is Ms. McBride with counsel, same counsel who sat with her in FBI interviews and unfortunately treated this case more like a civil case than a criminal case, like it should have. Basically filed a motion while the investigation was pending seeking to prevent Mr. Hendrickson from being interviewed. And as part of that motion, a declaration was submitted under counsel's caption. They were there in the meeting. They obviously, as officers of the court, reviewed, approved the declaration. They knew about this relationship, but set out all the facts that would give you a reasonable basis to conclude that Mr. Hendrickson was acting as counsel, that he was an admitted lawyer. His specialty was government contracts. He previously provided advice to Odyssey that he was doing things in the same nature here and very much is like that. He's writing memos. He's doing other things, asking for comments. And the lawyers looked at this and said, this looks like he's providing legal advice. And so Ms. McBride stated that she believed he was providing legal counsel. That is the false declaration. Okay. The fact that she subsequently or earlier had said, no, he was not my lawyer. That didn't enter into it. That was part of it. And I use the, for me, like I said, this is a very tricky issue that when I look at the facts, and if someone asked me, I would have a hard time answering it, whether he was actually serving as legal counsel at that time. That's why I think it's a nuanced, tricky, inherently vague issue. And I don't know if the court liked it, but I likened it to the question of, because it was very much presented, and I think this was part of the problem, as a black and white issue, you should just know, is someone your lawyer or are they not? And I think the law that we cited shows that this is a very nuanced question. So for me, this is like asking someone, is it raining outside when the sky is overcast, the sidewalk is wet, there's moist, you know, mist in the air, and you say, well, I don't know. I don't see drops actually falling from the sky. And then later someone comes along, a meteorologist, and says, you know what, this meets the standard for rain. It doesn't change the facts that you knew. It just helps you interpret those facts and say, okay, I didn't know he was acting as my legal counsel. Now that someone, an expert in this area, has looked at it and said, wow, it looks like he's providing legal advice, the facts don't change, but your belief can, to where you would say, okay, based on what I've been told now, it is raining outside. And, but this just is so vague and so hard to answer, in my opinion, that that was part of the problem. Isn't it a jury question at that point? What's that? Isn't it a jury question at that point? Well, the problem is, he's not my attorney, and now they're saying, yes, he is my attorney. And I, again, it's not a black and white binary question. So I think it could be a jury issue. And what one thing that we asked for below is for, to include in this instruction, the elements of how to create an attorney-client relationship. Because we think that was key to explaining to the jury, this isn't just black and white, right? This can be, this is a nuanced issue, where we could go through the elements of what might create an attorney-client relationship. Some of the materials we cited here that, even when it's not really intended, you could create one. And had we had the jury instruction we requested with those elements, we could have then walked through those with the jury to help them understand it's not a black and white question, and that Ms. McBride was very much acting in good faith and had a reasonable basis for her belief, even if it was different than what she had said before, that Mr. Hendrickson was acting as legal counsel. So counsel, can you talk about invited error? On this point, Your Honor, I don't think there's any invited error. We filed a motion to dismiss count five as a matter of law. That was dismissed. We asked for the jury instruction on these additional points, and that was rejected as far as what is required to create an attorney-client relationship. How about your first argument? On the first argument, Your Honor, we rely on the supervening decision doctrine. Simonelli, which we think is the key case here, was not decided until 11 months after. But I guess you don't challenge that you did submit the very instruction that was given. We did, Your Honor. We don't challenge that. Our position is just that we had no basis to know. You had no basis? No, to know the change in the law as far as the right to control. Did no court of appeals take the position that Simonelli took ultimately? Not that I'm aware of, Your Honor. So it was out of the blue. Well, I mean, there's, you know, I think you could maybe look around and say there's, you know, indications that given where the court has gone back and forth on honest services and some other things, but nothing that would, I don't think, give reasonable notice that, you know, this should be argued or requested as part of a jury instruction below. Thank you. What about your failure to argue plain error? Again, Your Honor, I don't know how we could argue plain error. Well, we didn't argue plain error because we didn't raise it below, but that's because Simonelli had not yet been issued. And so there was a change in law 11 months after the trial was concluded. But failure to argue plain error here, in front of us, you haven't argued that, correct? We haven't because... Why wouldn't you argue plain error in front of us? Well, the superseding, I think the superseding decision doctrine allows it to be raised without going through the plain error analysis. Well, help me understand why that is, yeah. Why do you not have to argue plain error if you didn't raise it below? Well, because there's a, there's been a change in law. So as I understand the Tenth Circuit case law, if there's been a substantive change in law, the court has held that it's neither fair nor would make sense to require that someone raise it below, which I think is what then prompts or requires the plain error analysis, right? A failure to raise it, but we couldn't raise it because the law, the change in the law had not yet taken place at the time of the trial. And you couldn't raise plain error in front of us because... Well, I guess... I see what your argument is, where you couldn't raise it below, but how about in front of us? Well, the plain error is a failure to, is based on a failure to object below, right? Or to, but here we couldn't have objected below because the change in law had not yet happened. So as I understand it, the supervening decision doctrine is a separate way to overcome that because you haven't, you didn't have the chance to object below. So you're not in the plain error territory. Below or here? Here. Here. Well, well, both. Yes. Okay. Thank you. Okay. And if I may, I'll reserve my time. Thank you. Thanks. May it please the Court, Nathan Jack of the United States. If the Waterfront Statute means anything, it means that someone cannot make material false representations to obtain a $99 million contract and get away with it simply because it performed on that contract. Performance is not a get-out-of-jail-free card. Ms. McBride and Odyssey were convicted for wire fraud for the lies they made to obtain the Fort Drum contract. On appeal, they claimed that the jury instruction defining scheme two defraud was incorrect, but this Court should affirm for three reasons. First, they invited error by proposing below the very instruction that they had challenged on appeal. Second, they weighed that argument by failing to argue plain error on appeal. And third, to the extent they wanted to instruct the jury on economic loss, that is an incorrect statement of law. On invited error, this Court has repeatedly held that a litigate cannot propose instructions below and then turn around and challenge those very instructions on appeal. Do we have any case law, though, with an intervening decision? There's been some discussion. I don't know that this Court has clearly adopted some type of supervening decision doctrine, but to the extent it does recognize such a doctrine, it has clearly rejected its application when that intervening case does not change the law. And Simonelli did not change the law here. As the Court in Simonelli recognized, it was simply applying the long-standing rule that fraud only covers traditional property interests to the Second Circuit's right-to-control theory. It applied McNally. It applied Cleveland. It applied Kelly. All these cases that existed before Simonelli saying fraud only covers money or property. The iteration that Simonelli had of dismissing the right-to-control theory has no application here. There was no right-to-control theory presented to the jury. Well, it's essentially a right-to-control because they wanted to give it to a qualified contractor and they thought this person was a qualified contractor. That's not the right-to-control theory. The right-to-control theory. I'm sorry. That is not the right-to-control theory. The right-to-control theory in Simonelli was not the prosecutor adopted the theory, not that the object of the scheme was to obtain a contract, but that the object of the scheme was to withhold valuable economic information. That was the theory that the circuit, sorry, that the Supreme Court rejected. Here, the theory from the beginning of the case was that the object of the scheme to defraud was the Fort Drum contract. That is money. That is property and case after case recognizes that that is a viable basis for a fraud claim. Well, but isn't that really the same? We can't look at the criminal conduct in Simonelli and say it's the same because again, it was the theory that the prosecutor adopted below. In response to a motion dismissal, and the Supreme Court explicitly said this, the prosecutor solely focused on the right-to-control theory that the object of the scheme was to withhold information, not that the object of the scheme was to obtain the money and the contract. And in fact, in Justice Alito's concurrence, he said, we're not saying that this couldn't have been tried under a theory that the object of the scheme was the contract. So we can't look and say, well, there are similar facts here. Therefore, it's the same as Simonelli, because the prosecutor did not adopt the theory that they did in Simonelli here. Well, counsel, can you go back though to the invited error? I mean, your opponent's argument is that invited error goes by the wayside when there's been a supervening decision. And I guess I'm asking you to address that point. I mean, I understand your argument that this really isn't supervening because nothing changed, but maybe we can assume it is a supervening decision what happens to invited error. I think if typically we look at where there is controlling case law that supports them and then that controlling case law is gone in between, then we could look at that and say, okay, we can excuse invited error here because they were bound. They had no option but to propose that language. That's certainly not the case here. Again, the controlling case law supported their proposed language. This court recognizes that, again, defining scheme to and fraud as to have an object of money or property, that is the longstanding rule since McNally, and that has not changed since Simonelli. So I think in this case, even if we recognize that there were such a doctrine, that it wouldn't be applied here. How about the plain error point? Plain error, even with this intervening decision, is not excused. That's how plain error operates. For plain error, we look at the law at the time of the appeal. And so if there is an intervening decision, the appellant can point to that intervening decision and say, at the time of the appeal, it's an error and it's plain, and then list the other factors. So a supervening decision should not excuse plain error review. That's simply how plain error review works on appeal, is we look at the law at the time of appeal. So it would make no sense to have this duplicative doctrine applied to plain error. So your argument, just let me restate it, is that your opponent has no argument at all. I guess it's entirely. Sorry, what was that? I guess your argument is that we should not even consider the simonelli or any of it because it hasn't been properly presented to us. That is correct. It's been waived twice, once through invited error and also through failing to argue plain error. Okay, there's a double waiver. Correct. Okay. Thank you. If this Court wants to get into the merits of this issue, I'm happy to discuss that. But if not, I can turn to the False Declaration Conviction. And I think the best way to walk through this conviction is to go through each of the claims that the appellants make about this. And there are really three claims here. First, there's a claim that the jury should have been instructed about the standard of attorney-client relationships. There's a claim that there was insufficient evidence to show that the declaration was false. And third, there was a claim about using the believe language in the instruction rather than the language from the declaration itself. And I'll take those in reverse. On the believe language, again, we have an invited error here. This was the language that Ms. McBride proposed below. So again, this Court should not consider the claim, it's been waived through invited error. It's also been waived as an unpreserved error with no argument for plain error. If it gets to the merits, again, there are a host of reasons why this Court should affirm. It maps the language from the indictment and there's been no challenge that this indictment was insufficient in any way. So we can't be faulted for tracking the indictment. The jury had... Just stop you there. So I'm sorry. What does the indictment say? So the indictment used the same language. Which was... I can pull that up here for you. So for count five, that she understood and believed the officer for business one was providing Odyssey legal advice as its legal counsel. Okay, and that's precisely what the instruction says? So the instruction says, I believe, that it believed that Pat Hendrickson was Odyssey's attorney. Thank you. There are other reasons, again, to affirm. And a lot of this is, kind of goes to the other points as well, but Miss McBride makes this deal about, you know, attorney-client relationship is a nuanced decision. It's not black and white, but the standard for an implied attorney-client relationship requires a subjective belief. So there's both the objective components, what a reasonable person would do, but there has to be a subjective belief on the part of the client in order for there to be an attorney- And the jury specifically found that Miss McBride did not believe that Pat Hendrickson was her or Odyssey's attorney. So it doesn't matter what these nuances, what these other factors, what other, what someone else may believe, because she did not believe that Pat Hendrickson was her attorney, there could be no implied attorney-client relationship. Which means that even if the jury had been instructed on that, which it already was, it's still, the result would have been the same here. Turning to the second claim about the insufficient evidence, again, this court should dismiss this claim because Miss McBride feels her appellant burden of persuasion. She has not even acknowledged, let alone explained away the evidence showing that the government proved that her statement was false, that she did not believe that Pat Hendrickson was her attorney. Again, we have the SBA letter in 2011. We have her interview with federal officers in which she expressly said, he wasn't my attorney. He wasn't Odyssey's attorney. We have Pat Hendrickson's testimony himself in which he described factors showing that Miss McBride did not believe that he was her attorney at the time. And finally, on the standard governing attorney-client relationships, again, this goes to that the jury was already instructed to determine whether Miss McBride subjectively believed that Pat Hendrickson was her attorney. That is a factor for attorney-client relationships. So it would essentially be redundant to have this, to be instructed again on it. But wouldn't it, I guess the argument is, wouldn't it have been clearer had they been separately instructed? No, I think, I think the district court reasonably determined that it could mislead the jury or confuse the jury. What mattered again was Miss McBride's belief and that adequately covers it. If she stated that she believed that Pat Hendrickson was her attorney and then the jury found that she did not actually in fact believe that, that demonstrates that it was a false declaration and that's precisely how the jury was instructed. So anything beyond that could confuse the jury by needlessly bringing in other factors that were really immaterial to the elements for false declaration. All right, if there are no other questions, I ask this court to affirm. Your Honors, I, we did cite the supervening decision doctrine in our papers and I'll just refer the court if we can to Annexter versus Homestake Production, 77 F. 3rd, 1215, 1231, 10th  As I read that, because you're not required to object, your failure to object below is excused. You're not in the plain error arena and that's why we didn't raise it, but we did cite that case, your Honor. As far as what I would like to kind of close with just to refer the panel to the words in Simonelli about this right to control theory, that's really where the court spends most of its time talking about what this means. I think Judge Kelly hit on that. Really, this hits our point where we have a contract that was going to be awarded no matter what and it was fulfilled. There is no economic loss. What was lost is just the ability to control which party actually performed the contract and the court in Simonelli was clear that just saying that the right to control is not consistent with the federal fraud statutes and it talked mostly about Second Circuit cases because that's where it's been the most developed and it stated as developed by the Second Circuit the right to control theory holds that since a defining feature of most property is the right to control the asset in question the property interest protected by the wire fraud statute include the interest of a victim in controlling his or her own assets. That's the Simonelli court restating its understanding of the right to control theory and that said also a cognizable harm occurs when the defendant's scheme denies the victim the right to control its assets by depriving it of information necessary to make discretionary economic decisions and then the court after now summarizing that theory said the right to control theory cannot be squared with the text of the federal fraud statutes which are limited in scope to the protection of property rights. So I would refer the court to that language and then on this objective belief point again, I would our point there is just this is a very tricky question going back to our rain analogy. It's the jury didn't under thought it was a black and white question because it didn't get any instruction on how nuanced it was and therefore didn't have an accurate basis to judge subjective belief. Thank you. Thank you for your arguments. Counsel is excused. Case is submitted.